Citation Nr: 1829790 
Decision Date: 08/13/18 Archive Date: 08/17/18

DOCKET NO. 09-02 967 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUES

1. Entitlement to an increased rating for service-connected Crohn's disease (also claimed as ulcerative colitis with inflammatory bowel disease), currently assigned a 30 percent evaluation. 

2. Entitlement to a higher initial rating for service-connected major depressive disorder, currently assigned a 50 percent evaluation. 

3. Entitlement to a higher initial rating for service-connected lumbar spine osteoporosis, currently assigned a 20 percent evaluation. 

4. Entitlement to a higher initial rating for service-connected left wrist osteoporosis, currently assigned a 10 percent evaluation. 

5. Entitlement to a higher initial rating for service-connected right wrist osteoporosis, currently assigned a 10 percent evaluation. 

6. Whether new and material evidence was received to reopen a claim for service connection for multiple joint arthralgia, including bilateral shoulder tendonitis, as secondary to service-connected ulcerative colitis with inflammatory bowel disease, and, if so, whether service connection is warranted. 

7. Whether new and material evidence was received to reopen a claim for service connection for abnormal weight gain, to include as secondary to service connected ulcerative colitis with inflammatory bowel disease and, if so, whether service connection is warranted. 

8. Entitlement to service connection for large intestine resection, to include as secondary to service connected ulcerative colitis with inflammatory bowel disease. 

9. Entitlement to service connection for chronic kidney disease, to include as secondary to service connected ulcerative colitis with inflammatory bowel disease. 

10. Entitlement to a total disability rating based on individual unemployability due to service connected disabilities (TDIU), prior to April 8, 2011. 


REPRESENTATION

Veteran represented by: Chisholm, Chisholm & Kilpatrick, LTD


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

J. Unger, Associate Counsel 



INTRODUCTION

The Veteran served on active duty from July 1979 to September 1983. 

These matters come before the Board of Veterans' Appeals (Board) on appeal from rating decisions issued in January 2008 and April 2012 by the Atlanta Department of Veterans Affairs (VA) Regional Office (RO) in Decatur, Georgia. 

In June 2013, the Veteran testified before the undersigned Veteran's Law Judge a Board hearing held at the RO. A transcript of the hearing has been associated with the Veteran's claims file. 

In Rice v. Shinseki, 22 Vet. App. 447 (2009), the Court of Appeals for Veterans Claims (Court) held that a claim for a TDIU due to service-connected disability is part and parcel of an increased rating claim for that disability when raised by the record. As noted in the December 2013 remand, the Board acknowledged that the RO denied the Veteran's TDIU claim in October 2009; however, the Veteran and his attorney claimed during the June 2013 hearing that he could not work due to the symptoms of his Crohn's disease. For this reason, the Board found in December 2013 that the issue of TDIU had been raised again. In an October 2017 rating decision, the RO granted the Veteran's claim for TDIU effective April 8, 2011. While the Veteran did not file a notice of disagreement with the October 2017 rating decision, he has continued to allege that he is entitled to a TDIU as part and parcel of his increased rating claim prior to April 8, 2011, therefore the claim remains on appeal. 

In a rating decision issued in August 2016, the RO awarded an earlier effective date for the Veteran's service-connected major depressive disorder and assigned a 50 percent evaluation effective April 8, 2011. In addition, the RO increased the Veteran's ratings for service-connected lumbar spine osteoporosis to 20 percent disabling, and left and right wrist osteoporosis to 10 percent disabling all effective April 8, 2011. However, inasmuch as higher ratings are available, and the Veteran is presumed to seek the maximum available benefit for a disability, the claims for higher ratings have remained viable on appeal. See AB v. Brown, 6 Vet. App. 35, 38 (1993).

This case was previously before the Board in December 2013 and March 2016. The Board remanded the claims for further development. The Board finds that with regard to the matters decided herein, the Agency of Original Jurisdiction (AOJ) has substantially complied with the remand orders and no further action is necessary in this regard. See D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998), where the Board's remand instructions were substantially complied with), aff'd, Dyment v. Principi, 287 F.3d 1377 (2002).

The issues of higher ratings for depression, lumbar osteoporosis, left and right wrist osteoporosis, the reopened claim for entitlement to service connection for multiple joint arthralgia, and the claims for service connection for chronic kidney disease, and a TDIU prior to April 9, 2011 are addressed in the REMAND portion of the decision below and are REMANDED to the AOJ.


FINDINGS OF FACT

1. The Veteran's Crohn's disease (also claimed as ulcerative colitis with inflammatory bowel disease) has manifested as moderately severe symptoms with frequent exacerbations noted by diarrhea, abdominal distension, anemia and nausea, without more severe manifestations such as severe symptoms with numerous attacks a year and malnutrition, health only fair during remissions or marked malnutrition, anemia, and general debility or with serious complications such as liver abscess. 

2. In a final decision issued in January 1998, the RO determined that new and material evidence sufficient to reopen the Veteran's claim for service connection for multiple joint arthralgia, as secondary to service-connected ulcerative colitis with inflammatory bowel disease had not been received.
3. Evidence added to the record since the last final denial in January 1998 is not cumulative or redundant of the evidence of record at the time of the decision and raises a reasonable possibility of substantiating the Veteran's claim of entitlement to service connection for multiple joint arthralgia, including bilateral shoulder tendonitis, as secondary to service-connected ulcerative colitis with inflammatory bowel disease.

4. In a final decision decided in October 2009, the RO denied the Veteran's claim for service connection for abnormal weight gain, to include as secondary to service- connected ulcerative colitis with inflammatory bowel disease.

5. Evidence added to the record since the final October 2009 denial is cumulative or redundant of the evidence of record at the time of the prior decision and does not raise a reasonable possibility of substantiating the Veteran's claim of entitlement to service connection for abnormal weight gain, to include as secondary to service- connected ulcerative colitis with inflammatory bowel disease.

6. At no time during the pendency of the claim does the Veteran have a current diagnosis of or evidence of surgery for resection of the large intestine, and the record does not contain a recent diagnosis of disability prior to the Veteran's filing of a claim.


CONCLUSIONS OF LAW

1. The criteria for a rating in excess of 30 percent disabling for Crohn's disease (also claimed as ulcerative colitis with inflammatory bowel disease) are not met. 38 U.S.C. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.321, 4.1-4.14, 4.114, Diagnostic Code 7323 (2017). 

2. The January 1998 rating decision that denied the Veteran's petition to reopen a claim of entitlement to service connection for multiple joint arthralgia, as secondary to service-connected ulcerative colitis with inflammatory bowel disease is final. 38 U.S.C. § 7105 (c) (West 2014) [(West 2014)]; 38 C.F.R. §§ 3.104, 20.302, 20.1103 (2017).

3. New and material evidence has been received to reopen the claim of entitlement to service connection for multiple joint arthralgia, including bilateral shoulder tendonitis, as secondary to service-connected ulcerative colitis with inflammatory bowel disease. 38 U.S.C. § 5108 (West 2014); 38 C.F.R. § 3.156 (a) (2017).

4. The October 2009 rating decision that denied the Veteran's claim for service connection for abnormal weight gain, to include as secondary to service-connected ulcerative colitis with inflammatory bowel disease is final. 38 U.S.C. § 7105 (c) (West 2014); 38 C.F.R. §§ 3.104, 20.302, 20.1103 (2017).

5. New and material evidence has not been received to reopen the claim of entitlement to service connection for abnormal weight gain, to include as secondary to service-connected ulcerative colitis with inflammatory bowel disease. 38 U.S.C. § 5108 (West 2014); 38 C.F.R. § 3.156 (a) (2017).

6. The criteria for service connection for resection of the large intestine have not been met. 38 U.S.C. §§ 1110, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2016). 

The Veteran in this case has not referred to any deficiencies in either the duties to notify or assist; therefore, the Board may proceed to the merits of the claim. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed.Cir. 2015, cert denied, U.S.C. Oct.3, 2016) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board....to search the record and address procedural arguments when the [appellant] fails to raise them before the Board"); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to an appellant's failure to raise a duty to assist argument before the Board).

The Board has reviewed the entire record, with an emphasis on the evidence relevant to this appeal. Although the Board must provide reasons and bases supporting its decision, there is no need to discuss, in detail, every piece of evidence of record. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Hence, the Board will summarize the relevant evidence as appropriate and the analysis below will focus specifically on what the evidence shows, or fails to show, in the present claims.

I. Request to Reopen Previously Denied Claims and Service Connection Claim

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303 (a). Service connection may also be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303 (d).

Direct service connection may not be granted without evidence of a current disability; in-service incurrence or aggravation of a disease or injury; and a nexus between the claimed in-service disease or injury and the present disease or injury. Id.; see also Caluza v. Brown, 7 Vet. App. 498, 506 (1995) aff'd, 78 F.3d 604 (Fed. Cir. 1996) [(table)].

Additionally, for Veterans who have served 90 days or more of active service during a war period or after December 31, 1946, certain chronic disabilities, such as organic diseases of the nervous system, are presumed to have been incurred in service if manifest to a compensable degree within one year of discharge from service. 38 U.S.C. §§ 1101, 1112; 38 C.F.R. §§ 3.307, 3.309. 

Alternatively, when a disease at 38 C.F.R. § 3.309 (a) is not shown to be chronic during service or the one year presumptive period, service connection may also be established by showing continuity of symptomatology after service. See 38 C.F.R. § 3.303 (b). However, the use of continuity of symptoms to establish service connection is limited only to those diseases listed at 38 C.F.R. § 3.309 (a) and does not apply to other disabilities which might be considered chronic from a medical standpoint. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

Rating actions are final and binding based on evidence on file at the time the claimant is notified of the decision and may not be revised on the same factual basis except by a duly constituted appellate authority. 38 C.F.R. § 3.104 (a). The claimant has one year from notification of an RO decision to initiate an appeal by filing a notice of disagreement with the decision, and the decision becomes final if an appeal is not perfected within the allowed time period. 38 U.S.C. § 7105 (b) and (c); 38 C.F.R. §§ 3.160 (d), 20.200, 20.201, 20.202, and 20.302(a).

Generally, a claim which has been denied in a Board decision or an unappealed RO decision may not thereafter be reopened and allowed. 38 U.S.C. §§ 7104 (b), 7105(c). The exception to this rule is 38 U.S.C. § 5108, which provides that if new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim. 

New evidence means existing evidence not previously submitted to agency decision makers. Material evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156 (a).

The Court has held that the determination of whether newly submitted evidence raises a reasonable possibility of substantiating the claim should be considered a component of the question of what is new and material evidence, rather than a separate determination to be made after the Board has found that evidence is new and material. See Shade v. Shinseki, 24 Vet. App. 110 (2010). The Court further held that new evidence would raise a reasonable possibility of substantiating the claim if, when considered with the old evidence, it would at least trigger the Secretary's duty to assist by providing a medical opinion. Id. 

For the purpose of establishing whether new and material evidence has been submitted, the credibility of the evidence is to be presumed. Justus v. Principi, 3 Vet. App. 510, 513 (1992).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

A. Multiple joint arthralgia and bilateral shoulder tendonitis

The Veteran previously claimed entitlement to service connection for multiple joint arthralgia, as secondary to service-connected ulcerative colitis with inflammatory bowel disease in March 1987, May 1995, May 1996 and in January 1998. Of record at the time of the last final denial in January 1998 were the Veteran's service treatment records, post-service treatment records dated through April 10, 1996, and a general medical examination conducted in August 1988. 

The RO in March 1987 noted that the Veteran's service treatment records were silent for any joint or back problems and that post-service, the Veteran's records do not reflect any chronic joint or back problems until April 1985. Furthermore, the RO noted that upon examination in 1986, the Veteran's spine, elbows, knees, both hands, and wrists were all normal, however a diagnosis of arthralgia of the knees, hands, elbows and cervical spine was made. The RO in May 1995 and 1996 noted that the evidence did not show that multiple joint pain was directly related to the medications that the Veteran took for his service-connected condition of ulcerative colitis. Furthermore, that the Veteran had not presented any evidence demonstrating a relationship between the Veteran's medications and his joint pain. Finally, the RO in January 1998 continued the prior denials from 1987, 1995, and 1996 and noted that while the RO had requested that the Veteran submit new and material evidence in order to reopen his claim, the Veteran failed to respond. 

In January 1998, the Veteran was advised of the decision and his appellate rights. However, no further communication regarding his claim of entitlement to service connection for multiple joint arthralgia, as secondary to service-connected ulcerative colitis with inflammatory bowel disease was received until April 2011, when VA received his application to reopen such claim. Therefore, the January 1998 rating decision is final. 38 U.S.C. § 7105 (c) (West 2014); 38 C.F.R. §§ 3.104, 20.302, 20.1103 (2017). 

Evidence received since the January 1998 decision consists of VA treatment records dated through July 2016, private treatment records dated April 2015, vocational assessments, as well as VA examinations conducted in December 2011, October 2014, and April 2016. The Veteran also described his symptoms through the present time in several statements and during his June 2013 hearing testimony. The Board notes that the Veteran is capable of reporting observable symptoms of an injury or illness, as well as the length of time those symptoms have persisted. See Layno v. Brown, 6 Vet. App. 465, 469-70 (1994).

Presuming the credibility of the Veteran's statements pursuant to Justus and, in light of the August 2011 examination, post-service treatment records, and June 2013 hearing testimony, the Board finds that the evidence received since the January 1998 rating decision is neither cumulative nor redundant, and raises the possibility of substantiating the claim of service connection. See 38 C.F.R. § 3.156 (a). In this regard, the Veteran's claim for multiple joint arthralgia, as secondary to service-connected ulcerative colitis with inflammatory bowel disease was previously denied in January 1998 as the record did not indicate that the claimed condition, the Veteran's diagnosed arthralgias, were directly related to the medications that he took for his service-connected ulcerative colitis with inflammatory bowel disease. However, the evidence received since the 1998 decision indicates that the Veteran is also diagnosed with bilateral shoulder tendonitis, but there is no affirmative notation as to its etiology. Furthermore, the Veteran has alleged at his hearing and in additional statements that his conditions were related to his service-connected condition and not merely the medications taken for such. Therefore, based on the foregoing reasons, the Board finds that new and material evidence has been received and, accordingly, the claim of entitlement to service connection for multiple joint arthralgia, including bilateral shoulder tendonitis, as secondary to service-connected ulcerative colitis with inflammatory bowel disease is reopened.

B. Abnormal weight gain

The Veteran previously claimed entitlement to service connection for abnormal weight gain, to include as secondary to service-connected ulcerative colitis with inflammatory bowel disease in October 2009. Of record at the time of the October 2009 rating decision were the Veteran's service treatment records and VA treatment records dated through July 2009. The RO found that abnormal weight gain was neither a disease or injury and that service connection was denied as abnormal weight gain was not considered a disabling condition.

In October 2009, the Veteran was advised of the decision and his appellate rights. However, no further communication regarding his claim of entitlement to service connection for abnormal weight gain, to include as secondary to service-connected ulcerative colitis with inflammatory bowel disease was received until April 2011, when VA received his application to reopen such claim. Therefore, the October 2009 rating decision is final. 38 U.S.C. § 7105 (c) (West 2014); 38 C.F.R. §§ 3.104, 20.302, 20.1103 (2017). 

Evidence received since the October 2009 decision consists of VA treatment records dated through July 2016, private treatment records dated April 2015, vocational assessments, as well as VA examinations conducted in December 2011, October 2014, and April 2016. Such records reflect the Veteran's continued treatment for his various conditions as well as his complained of weight fluctuations, however such do not reflect any relevant information, nor do they contain any diagnoses related to his alleged weight condition. Additionally, while the Veteran has submitted statements regarding the onset and severity associated with his claimed weight condition during the course of the appeal, such are duplicative of his contentions that were previously of record at the time of the October 2009 rating decision. Specifically, he simply continues to contend that his weight gain is the result of his service-connected disability. 

Therefore, the Board finds that the evidence received since the October 2009 rating decision is cumulative or redundant of the evidence of record at the time of the prior decision and does not raise a reasonable possibility of substantiating the Veteran's claim of service connection for abnormal weight gain, to include as secondary to service connected ulcerative colitis with inflammatory bowel disease. Consequently, new and material evidence has not been received to reopen such claim and the Veteran's appeal must be denied.

C. Resection of the large intestine 

The Veteran is also seeking service connection for resection of the large intestine. 

The Veteran's service treatment records are silent for any complaints, treatment or diagnosis of a resection of the large intestine. Furthermore, the Veteran's post-service records are also silent for any such surgery. Specifically, the Veteran's treatment records explicitly note that the Veteran has not undergone any surgeries or resections. 

The Veteran underwent general examinations and intestinal conditions examinations in November 1986, August 1988, August 2000, December 2007, August 2011, October 2014, and April 2016. The examiners in November 1986, August 1988 and 2000 did not mention any surgeries or resections. During the December 2007 and August 2011 examinations, the Veteran reported that he had not been hospitalized or undergone any surgeries. The examiners in October 2014 and April 2016 explicitly found that the Veteran had not undergone any surgeries or resections. 

Therefore, based on the evidence of record, the Board finds that a preponderance of the competent medical evidence is against a finding that the Veteran currently suffers from or has ever had a resection of his large intestine. All the VA examinations of record have either been silent for any resection surgeries or specifically denied such. In addition, the Veteran's treatment records specifically note that he has not undergone any such surgery. The Court has indicated that in the absence of proof of a present disability, there can be no valid claim for service connection as Congress has specifically limited entitlement to service connection to cases where such incidents have resulted in a disability. Brammer v. Derwinski, 3 Vet. App. 223 (1992). Again, the Court has also held that the requirement of a current disability is satisfied when the claimant has a disability at the time a claim for VA disability compensation is filed or during the pendency of that claim, and that a claimant may be granted service connection even though the disability resolves prior to adjudication of the claim. McClain v. Nicholson, 21 Vet. App.319, 321 (2007).

In conclusion, the preponderance of the evidence is against service connection for resection of the large intestine. As the preponderance of the evidence weighs against the claim, the benefit-of-the-doubt doctrine does not apply. See 38 U.S.C. § 5107 (b).

II. Increased Rating Claim

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities, found in 38 C.F.R., Part 4. The rating schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. 

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise the lower rating will be assigned. 38 C.F.R. § 4.7. All benefit of the doubt will be resolved in the Veteran's favor. 38 C.F.R. § 4.3.

A. Crohn's disease

The Veteran is seeking a higher rating for his service-connected Crohn's disease (also claimed as ulcerative colitis with inflammatory bowel disease). Currently, the Veteran's Crohn's disease or ulcerative colitis is assigned a 30 percent rating, effective June 12, 1987, pursuant to 38 C.F.R. § 4.114, Diagnostic Code 7323.

Under Diagnostic Code 7323, moderate ulcerative colitis, with infrequent exacerbations, is rated 10 percent disabling. Moderately severe ulcerative colitis, with frequent exacerbations, is rated 30 percent disabling. Severe ulcerative colitis, with numerous attacks a year and malnutrition, the health only fair during remissions, is rated 60 percent disabling. Pronounced ulcerative colitis, resulting in marked malnutrition, anemia, and general debility, or with serious complication as liver abscess, is rated 100 percent disabling.

The Board notes that words such as "severe," "moderate," and "mild" are not defined in the Rating Schedule. Rather than applying a mechanical formula, VA must evaluate all evidence, to the end that decisions will be just. See 38 C.F.R. § 4.6. Although the use of similar terminology by medical professionals should be considered, it is not dispositive of an issue. Rather, all evidence must be evaluated in arriving at a decision for an initial disability rating. See 38 U.S.C. § 7104; 38 C.F.R. §§ 4.2, 4.6.

As noted, the Veteran is seeking an increased rating for his service connected Crohn's disease (also claimed as ulcerative colitis with inflammatory bowel disease) such claim was received by VA in July 2007, therefore the appeal period begins July 2006. 
 
The Veteran's post-service treatment records reflect the Veteran's continued complaints and treatment for his service-connected Crohn's disease (also claimed as ulcerative colitis with inflammatory bowel disease). The Veteran reported nausea and vomiting, fluctuating diarrhea and constipation, bloody stools, fatigue, and sore joints. The records also note that the Veteran was treated for mild anemia as a result of his service-connected condition. 

The Veteran underwent a December 2007 VA examination for his ulcerative colitis with inflammatory bowel disease. The examiner noted that the Veteran had been diagnosed with ulcerative colitis in 1983 when he developed abdominal pain with bloody stool and mucus. The examiner noted that the condition affected the Veterans general health by causing generalized arthralgias and myalgias, as well as impacting the Veteran's weight. The Veteran reported nausea and vomiting, diarrhea and alternating diarrhea and constipation, without chronic constipation. He reported abdominal pain, characterized as cramps, which occurred more than 2/3 of the year. He noted that his cramps occurred intermittently, as often as 3 times a week and lasted about an hour at a time. He reported that he had not been hospitalized nor had surgery for his condition. Upon examination, the examiner noted that the Veteran was well nourished and in no acute distress. The Veteran's abdomen was tender to palpation, but no findings of liver enlargement, distention of superficial veins, striae on the abdominal wall, ostomy, ascities, splenomegaly or aortic aneurysm. The examiner found that the Veteran had abdominal tenderness of the right lower quadrant and epigastric area, but no rebounding or guarding and no intestinal fistula. CBC testing was normal. The examiner found that the Veteran had ulcerative colitis with inflammatory bowel disease, because of his subjective accounts and objective physical examination and medications. The examiner noted that there was no anemia or malnutrition. 

In August 2011, the Veteran underwent a general VA examination, which specifically looked at the Veteran's lumbar spine, bilateral shoulders and wrists, and his kidneys. The Veteran reported fever, nausea, flank pain, chills, back pain, dyspnea, fatigue, lower abdominal pain, lethargy and weakness. He stated that he did not have vomiting, syncope, anorexia, angina and edema. He reported that he never was hospitalized or had any surgery for his condition. Upon physical examination, the examiner noted no evidence of striae on the abdominal wall or distention of superficial veins, no evidence of ostomy, and tenderness to the abdomen or flank on palpation. The examiner found no masses and no evidence of splenomegaly, ascites, or ventral hernia. The examiner noted no liver enlargement or aortic aneurysm. Diagnostic testing revealed signs of anemia, leukocytosis, and thrombocytosis likely due to colitis. 

In October 2014, the Veteran underwent another intestinal conditions examination. On the disability benefits questionnaire (DBQ) report, the examiner noted that the Veteran suffered from Crohn's disease. The Veteran reported that he had been diagnosed with Crohn's disease in 1992, but that his symptoms began while he was still in the service. He reported frequent vomiting, diarrhea, weight loss, and blood in his stool. He underwent a colonoscopy and was diagnosed with inflammatory bowel disease. After discharge, he continued to have chronic diarrhea and was treated with prednisone. He underwent several colonoscopies and colon biopsies. 

At the time of the examination, he reported intermittent diarrhea and nausea, anemia, abdominal distension, and blood in his stool. He denied vomiting, but noted that he felt bloated after eating and had intermittent flare ups. He had mild anemia and chronic joint pain. The examiner noted that continuous medication was needed to control the Veteran's condition, but that he had not undergone any surgical treatment. The examiner noted that the Veteran had occasional episodes of bowel disturbance with abdominal distress and episodes of exacerbation and/or attacks of the intestinal condition which occurred about every 3-6 months and indicated about 2 exacerbations and/or attacks in the preceding 12 months. The examiner noted that the Veteran did not have weight loss, malnutrition, or other general health complications or effects attributable to his intestinal condition. He noted that the Veteran did not exhibit health only fair during remission, general debility, or serious complication such as liver abscess. The examiner found no other pertinent physical findings or symptoms. The examiner opined that the Veteran was not malnourished, but was mildly anemic and that his Crohn's disease had improved with minimal findings on his last colonoscopy and biopsy. He found that the Veteran's intestinal condition impacted his ability to work in that the Veteran had not been able to work due to his fatigue and chronic diarrhea. However, he also found that the Veteran could work a part time sedentary or light physical activity job with accommodations to allow for bathroom breaks. 

In April 2016, the Veteran underwent an additional intestinal conditions examination. On the DBQ report, the examiner noted that he did not review the Veteran's records but based his conclusions solely on an in-person examination. The examiner confirmed the Veteran's prior diagnosis of ulcerative colitis. The examiner found that continuous medication was required to control the Veteran's condition and that he had not undergone any surgical treatment. The examiner noted that the Veteran had diarrhea, abdominal distension, anemia, joint pain, fatigue, bleeding and muscle aches. The examiner also noted frequent episodes of bowel disturbance with abdominal distress and episodes of exacerbations and/or attacks of the intestinal condition to include severe crampy abdominal pain, bleeding, and loose stool. The examiner noted that such attacks occurred 2 times in the preceding 12 months. The examiner found that the Veteran did have weight loss as a result of his intestinal condition and that while the Veteran did not exhibit health only fair during remission, general debility, serious complication such as liver abscess, or malnutrition, he did have anemia and Vitamin D deficiency. The examiner found no other pertinent physical findings or symptoms. The examiner indicated that the Veteran's condition would impact his ability to work in that inflammatory bowel disease would limit sedentary work such as prolonged sitting because of frequent, unpredictable bowel movements, rectal bleeding, and abdominal pain. His physical limitations would include strenuous activity such as heavy lifting and prolonged standing due to joint/muscle aches, pain, rectal bleeding, and frequent bowel movements. Finally, the examiner opined that the Veteran had ulcerative colitis with inflammatory bowel disease and anemia and that while the Veteran reported that he had been diagnosed with Crohn's disease, the examiner did not review the Veteran's medical records and therefore could not confirm the changed diagnosis. 

During the June 2013 Board hearing, the Veteran testified that his symptomatology included bleeding, diarrhea, constipation, abdominal pain, and that he was anemic for which he took iron supplements. In addition, he testified that his ulcerative colitis or Crohn's disease caused his other service connected conditions and as a result he could no longer work. The Veteran reported that he did not sleep well as a result of his condition and that he often slept separate from his wife due to his frequent trips to the bathroom. He testified that he stayed home and tried to relax most of the time as his bowel movements were unpredictable and caused him great discomfort. He testified that he took medications to try to relieve his symptoms; however such often caused additional symptoms. In addition, the Veteran testified that if he left the house, he would wear black incase he had an accident. 

In summary, the totality of the evidence, including that from the Veteran and VA examiners, shows that the Veteran's Crohn's disease (also claimed as inflammatory bowel disease) does not warrant a rating in excess of 30 percent disabling. 

In this regard, the Veteran has not exhibited severe symptoms with numerous attacks a year and malnutrition, and his health has not been fair only during remissions to warrant a 60 percent rating under Diagnostic Code 7323. All of the VA examiners of record found that the Veteran did not exhibit malnutrition, and the examiners in October 2014 and April 2016 specifically found that the Veteran's health was not only fair during remissions. Furthermore, while the Veteran did suffer attacks or flare-ups of his intestinal condition, such were noted to be occasional or frequent happening every 3-6 months and only approximately 2 occurring in the 12 months preceding his examinations. Furthermore, the October 2014 examiner stated that while the Veteran was mildly anemic, his Crohn's disease had improved with minimal findings on the last colonoscopy and biopsy. Therefore, the Board finds that a higher rating of 60 percent is not warranted for the Veteran's service-connected Crohn's disease (also claimed as ulcerative colitis with inflammatory bowel disease). 

Furthermore, as the Veteran does not meet the schedular criteria for a 60 percent rating, he certainly does not meet the criteria for a 100 percent rating under Diagnostic Code 7323. The evidence of record does not show that the Veteran's Crohn's disease (also claimed as ulcerative colitis with inflammatory bowel disease) has manifested as pronounced symptoms resulting in marked malnutrition, anemia, and general debility, or with serious complications such as liver abscess. While it was noted that the Veteran was anemic, the examiners as well as the Veteran's treatment records, note that such was mild. In addition, while the Veteran testified at his hearing that his condition confines him to his home due to his frequent bathroom trips, the October 2014 examiner indicated that the Veteran's condition had improved. Furthermore, there is no evidence and the Veteran has not alleged that he suffers from marked malnutrition or serious complications such as liver abscess. Therefore, the Board finds that a higher rating of 100 percent is not warranted for the Veteran's service-connected Crohn's disease (also claimed as ulcerative colitis with inflammatory bowel disease).

The Board has also considered whether higher or separate ratings were warranted under alternative diagnostic codes. However, the Board finds that the Veteran's symptomatology is completely covered under Diagnostic Code 7323 and no other Diagnostic Codes apply. 

Therefore, based on the totality of the evidence of record, the Board finds that the Veteran is not entitled to a rating in excess of 30 percent disabling for his service- connected Crohn's disease (also claimed as ulcerative colitis with inflammatory bowel disease). The Board has also considered the doctrine of reasonable doubt. However, as the preponderance of the evidence is against the Veteran's claim for an increased rating, the doctrine is not for application. 38 38 U.S.C. § 5107; 38 C.F.R. § 4.3; Gilbert, 1 Vet. App. at 49.

B. Other considerations

The Board has considered whether staged ratings under Hart, supra, are appropriate for the Veteran's service-connected Crohn's disease (also claimed as ulcerative colitis with inflammatory bowel disease); however, the Board finds that his symptomatology has been stable for such disability throughout the appeal. Therefore, assigning staged ratings is not warranted.

In making its determinations in this case, the Board has carefully considered the Veteran's contentions with respect to the nature of his service-connected disability at issue and notes that his lay testimony is competent to describe certain symptoms associated with such disability. The Veteran's history and symptom reports have been considered, including as presented in the medical evidence discussed above, and have been contemplated by the disability rating for which the Veteran has already been assigned. Moreover, the competent medical evidence offering detailed specific findings pertinent to the rating criteria is the most probative evidence with regard to evaluating the pertinent symptoms of the service-connected disability at issue. As such, while the Board accepts the Veteran's testimony with regard to the matters he is competent to address, the Board relies upon the competent medical evidence with regard to the specialized evaluation of functional impairment, symptom severity, and details of clinical features of the service-connected condition at issue.

ORDER

A rating in excess of 30 percent disabling for service-connected Crohn's disease (also claimed as ulcerative colitis with inflammatory bowel disease) is denied. 

New and material evidence having been received, the claim for service connection for multiple joint arthralgia, including bilateral shoulder tendonitis, as secondary to service-connected ulcerative colitis with inflammatory bowel disease is reopened; the appeal is granted to this extent only.

New and material evidence not having been received, the claim for service connection abnormal weight gain, to include as secondary to service-connected ulcerative colitis with inflammatory bowel disease is denied.

Service connection for resection of the large intestine is denied. 


REMAND

Although the Board regrets the additional delay, a remand is necessary to ensure that due process is followed and that there is a complete record upon which to decide the Veteran's remaining claims so that he is afforded every possible consideration. 38 U.S.C. § 5103A; 38 C.F.R. § 3.159.

I. Increased Rating Claims 

Relevant to the Veteran's claims for increased ratings for his major depressive disorder, lumbar spine osteoporosis, and left and right wrist osteoporosis, the record reflects that the Veteran was most recently afforded examinations for his back and wrists in August 2011 and for his mental health condition in December 2011. The Board finds that contemporaneous examinations are necessary as so much time has passed, the Veteran has alleged significantly worsening symptoms, and the Veteran's conditions are degenerative in nature. 

The Board also finds that a remand is required so that range of motion testing can be conducted pursuant to a recent decision issued by the Court in Correia v. McDonald, 28 Vet. App. 158 (2016). The new examinations should include specific findings regarding the Veteran's range of motion in active motion, passive motion, weight-bearing, and nonweight-bearing. 

II. Service Connection Claims 

Relevant to the Veteran's newly reopened claim for service connection for multiple joint arthralgia, including bilateral shoulder tendonitis, as secondary to service-connected ulcerative colitis with inflammatory bowel disease, during the prior December 2011 VA examination, the examiner diagnosed the Veteran with bilateral shoulder tendonitis. However, the examiner provided no etiological opinion. Furthermore, the examiner made no reference or acknowledgement of the Veteran's previously diagnosed arthralgias. In addition, the Veteran has alleged that his conditions are secondary to his service-connected condition and not just the result of the medications that he takes for his service-connected condition. Therefore, on remand, an examination and opinion that takes all of the Veteran's relevant diagnoses and theories of entitlement into consideration must be obtained. 

Relevant to the Veteran's claim for service connection for chronic kidney disease, the Veteran underwent a prior VA examination in August 2011. The Veteran reported that he did not know when his condition began nor did he sustain any trauma to his genitals or genitourinary system, but that he was diagnosed with a kidney condition in June 2010. He reported fever, nausea, flank pain, anorexia, angina and edema. He reported that he had urinary hesitancy/difficulty but that he also had frequency problems. He reported no dysuria, a weak/intermittent stream, strain to urinate, hematuria, dribbling, urethral discharge or nocturia. He noted that he did not experience urinary leakage or incontinence, and that he did not have a history of UTIs, obstructive voiding, urinary tract stones, renal failure, renal dysfunction, acute pehritis, hydronephrosis, or erectile dysfunction. The Veteran stated that he had been on sulfasalazine for his Crohn's disease, but that his doctor stopped the medication due to elevated creatinine. Upon examination, the examiner found the Veteran to be physically normal and urinalysis was absent of any protein, sugar, RBC, hyaline casts or granular casts. The examiner determined that the Veteran did not have a diagnosis for a kidney condition as there was no pathology to render such. However, the Board notes that in a July 30, 2013 hospital admission note, the Veteran was diagnosed with chronic kidney disease. Therefore, on remand an examination to determine the nature and etiology of the Veteran's claimed condition should be obtained. 

III. TDIU

Relevant to the Veteran's claim for a TDIU, while the Veteran has been awarded a TDIU effective April 8, 2011 due to all of his service-connected disabilities, he alleges that his service-connected Crohn's disease prevented him from working as early as 2001. The Veteran's award was made effective April 8, 2011 as such was the date that the Veteran met the schedular criteria for a TDIU, as well as the date upon which the RO determined that the Veteran's service-connected conditions in combination made him unemployable. However, as the Veteran has alleged that his service-connected Crohn's disease alone made him unemployable prior to April 8, 2011, and as he submitted a July 2017 private opinion, where the examiner opined that such would render him unemployable from 2001, the RO should consider whether referral of the Veteran's claim for a TDIU to the Director, Compensation Service, for adjudication in accordance with the provisions of 38 C.F.R. § 4.16 (b) is warranted.

Finally, due to the amount of time which will pass on remand, updated treatment records should be obtained and associated with the claims file. 



Accordingly, the case is REMANDED for the following action:

1. Obtain updated VA treatment records.

2. The Veteran should be afforded an appropriate VA examination to determine the current nature and severity of his service-connected major depressive disorder. 

The examiner is asked to furnish an opinion with respect to the following questions:

Identify the nature and severity of all manifestations of the Veteran's condition. The examiner should provide a full description of the effects, to include all associated limitations, of the Veteran's major depressive disorder on his daily activities and employability.

3. The Veteran should be afforded an appropriate VA examination to determine the current nature and severity of his service-connected lumbar spine osteoporosis. 

The examiner is asked to furnish an opinion with respect to the following questions:

(A) Identify the nature and severity of all manifestations of the Veteran's condition. The examiner should provide a full description of the effects, to include all associated limitations, of the Veteran's lumbar spine osteoporosis on his daily activities and employability.

(B) Record the results of range of motion testing for pain on both active and passive motion. If this testing cannot be done, the examiner should clearly explain why this is so.

(C) Determine whether the Veteran's spine exhibits weakened movement, excess fatigability, or incoordination; and if so, the examiner must describe the nature and severity thereof

(D) Identify any evidence of musculoskeletal or neurologic dysfunction. Any sensory or motor impairment in the extremities due to service-connected disabilities should be identified. The examiner should provide an opinion with respect to any symptoms due to nerve root impingement as to whether they are mild, moderate, moderately severe, or severe.

The examiner should consider all evidence of record, including lay statements and medical records. Any opinions offered should be accompanied by clear rationale consistent with the evidence of record.

4. The Veteran should be afforded an appropriate VA examination to determine the current nature and severity of his service-connected right and left wrist osteoporosis. 

The examiner is asked to furnish an opinion with respect to the following questions:

(A) Identify the nature and severity of all manifestations of the Veteran's conditions. The examiner should provide a full description of the effects, to include all associated limitations, of the Veteran's right and left wrist osteoporosis on his daily activities and employability.

(B) Record the results of range of motion testing for pain on both active and passive motion and in weight-bearing and nonweight-bearing. If this testing cannot be done, the examiner should clearly explain why this is so.

5. The Veteran should be afforded an appropriate VA examination to determine the current nature and etiology of his claimed arthralgia and bilateral shoulder tendonitis. The record, to include a copy of this remand, must be made available to and be reviewed by the examiner, and the examination report should note that review. Any indicated evaluations, studies, and tests should be conducted.

The examiner is asked to furnish an opinion with respect to the following questions:

(A) The examiner should confirm the diagnoses of arthralgia and/or bilateral shoulder tendonitis.

(B) For any currently diagnosed arthralgia and/or tendonitis, the examiner should determine whether it is at least as likely as not (i.e., a 50 percent or greater probability) that such disorders are directly related to service.

(C) Is it at least as likely as not (i.e., a 50 percent or greater probability) that the Veteran's arthralgia and/or tendonitis is (i) caused OR (ii) was aggravated (i.e., permanently worsened beyond the natural progression) by the Veteran's service-connected Crohn's disease or the medications that the Veteran takes for such service connected condition. If aggravation is found, the examiner should attempt to quantify the degree of additional disability resulting from the aggravation. The examiner must answer both questions concerning causation and aggravation. 

The examiner is asked to explain the reasons behind any opinions expressed and conclusions reached. The examiner is reminded that the term "as likely as not" does not mean "within the realm of medical possibility," but rather that the evidence of record is so evenly divided that, in the examiner's expert opinion, it is as medically sound to find in favor of the proposition as it is to find against it.

6. The Veteran should be afforded an appropriate VA examination to determine the current nature and etiology of his claimed chronic kidney disease. The record, to include a copy of this remand, must be made available to and be reviewed by the examiner, and the examination report should note that review. Any indicated evaluations, studies, and tests should be conducted.

The examiner is asked to furnish an opinion with respect to the following questions:

(A) The examiner should confirm the diagnosis of chronic kidney disease. If the examiner finds that the Veteran does not have chronic kidney disease, the examiner must explain such in light of the July 30, 2013 diagnosis.

(B) For currently diagnosed chronic kidney disease, the examiner should determine whether it is at least as likely as not (i.e., a 50 percent or greater probability) that such is directly related to service. 

(C) Is it at least as likely as not (i.e., a 50 percent or greater probability) that the Veteran's chronic kidney disease is (i) caused OR (ii) was aggravated (i.e., permanently worsened beyond the natural progression) by the Veteran's service-connected Crohn's disease or the medications that the Veteran takes for such service connected condition. If aggravation is found, the examiner should attempt to quantify the degree of additional disability resulting from the aggravation. The examiner must answer both questions concerning causation and aggravation. 

The examiner is asked to explain the reasons behind any opinions expressed and conclusions reached. The examiner is reminded that the term "as likely as not" does not mean "within the realm of medical possibility," but rather that the evidence of record is so evenly divided that, in the examiner's expert opinion, it is as medically sound to find in favor of the proposition as it is to find against it.

7. Finally, the AOJ must readjudicate the Veteran's claim for a TDIU. In doing so, the AOJ should consider whether referral of the Veteran's claim for a TDIU to the Director, Compensation Service, for adjudication in accordance with the provisions of 38 C.F.R. § 4.16 (b) is warranted

8. Readjudicate the appeal.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).



This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (West 2014).




______________________________________________
BETHANY L. BUCK
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs